May I please report Robert S. Henry for appellant? The key basis for the claim of lack of equal protection in this case is the extension by the state of the option to the counties. Before we get to the equal protection, let me ask you something about weakness, because it affects our jurisdiction. Basically, the way around nothing can be done about the 2004 election is that the conduct is capable of repetition yet evading review. I distinctly remember, because I was involved in both, these hurry-up cases we had, where we had a last-minute challenge to the recall election of the governor in California, and it turned out that we managed to review it, and it was Sutton v. Shelley, I can't remember the name of the case, but it's the recall case. We had an en banc on it. We had a three-judge panel, and then we had an en banc, we had a decision, full deal. Also, I had a case on motions and screening. Every judge gets them every election year, every even-numbered November. The Ralph Nader campaign wanted an injunction to change something in the election in Nevada, presidential election in Nevada, and we just ruled. So I wonder why it's capable of repetition yet evading review. It seems like these things don't evade review. We review them routinely. Well, Your Honor, you recognize all the case law indicates that per se elections are the type of things that are capable of repetition. I don't think they say per se. There's language in several of our cases that say these election law problems tend to be capable of repetition yet evading review. But here we have a bunch of cases where they haven't evaded review. Well, Your Honor, let me take a first short thing to remind this court that I saw a permanent injunction against enforcement of the statute. That's not moving. The only thing that they brought up, she brought up, was military. Well, there would be a person standing unless the man says he's going to run again and the same thing's going to happen. Well, Your Honor, as I indicated before, the prior cases are very liberal when it gets to movements when it comes to a case of an election. And in this very case. Can I ask a question? Did you allege that you were going to run again? Excuse me? Did you allege that you were going to run again? No, because at the time I filed that I was only running the election. It was before, well before the election. But if we asked you and you had a final declaration, would you say that you would run again? I'm going to be looking at the number of judges who retire next month. And as well, my opponent criticized the first plea that he did in federal court was to criticize me for bringing this thing so late. And, Your Honor, you also have to consider, we're talking about the publishing of the ballot. I don't know the cases you were talking about, a recall statement where you're only dealing with whether an election is going to go off or an election is not going to go off or the traditional cases. We're talking about publishing a candidate statement in the ballot, sample ballot. And that sample ballot has printing requirements and all of those things. So I think I calculated in my reply the amount of time that you have. Why would that evade review? It seems like there must be a deadline where you have to file for election. And at that point, you've got some period of time between your filing and the actual election. How long is that period? Because, Your Honor, it doesn't say evade review. It says capable of evading review. How long is that? Capable of repetition. Well, let me take a look at my reply brief and tell you the – and I think I – in the precise window that we have in this case. That's what I want to know. What is the window? Oh, okay. Capable of repetition. Capable of repetition, yet evading review. I'm focusing on the yet evading review. So I want to know the length of the window between the filing date and the election. I guess the filing date, there's a span of when it opens and when it closes. And it would be helpful if I knew both. Your Honor, I thought I had it in my – in my appellate brief. Oh, wait a minute. Oh, 113 days. That's from the deadline for filing to the election? Yes, 113 days. Do you know what the span is from the opening of filing to the election? Well, Your Honor, that calculated the soonest that you could do it and not run into a rightness question. Thought so. So, in other words, if you – if you – I'm thinking once you file, you have standing. But also, isn't there a sort of – isn't there kind of a strategy about filing in judicial elections in California where you file first? And particularly in my case, you have to wait until the – you determine which incumbents are going to retire. That's a legal requirement, right? Right. That's a tactical judgment. Well, right. I guess you could file for a seat in, I guess, an incumbent judge if you wanted to. But I think my figures, the 113, are based on – are not based on the waiting for an incumbent judge. So I guess the question that we have to answer is whether it's impossible or highly impractical to get review – to get a decision in review of an election question in 113 days. Your Honor, I think you're not just talking about this case. You know, we're asking a question that's going to probably impact the whole Ninth Circuit. I mean, hasn't the Supreme Court done this over and over again in election cases? And hasn't the Ninth Circuit done it over and over again in election cases, i.e., recognized without getting into minutia about the exact time period that whether it's three months or four months or five months, given the way our legal system works, it's not going to happen in – I mean, it'll happen in a very high-profile case like the case involving the recall election. But in a case without a single judge running for election in Los Angeles, the whole legal system is unlikely to gear up to deal with it. Yes, Your Honor. I think at the time we had the hearing on the motion for summary – or the motion for a preliminary injunction, the ballots were already due to be printed that next day. Now, why couldn't you get a review by posting the $65,000 and litigating, continuing the litigation and the review process after the election is over in order to get the $65,000 back? You can say that in any constitutional case. You can say, why doesn't the plaintiff just give up his constitutional rights and litigate the question in abstract? Well, I'm not focusing on that. Of course, you'd have to have the $65,000. Of course, you'd have to have the $65,000, too. What I'm focusing on here is whether it fits the yet evading review. Yes. And you'd have to have the $65,000, too. And that also applies to the question. The other reason that if you did that, the county would have a complaint because you would have gotten the publication. The way the system works, if you don't pay the $65,000, you don't get the publication. Here, you would have gotten the publication, and they'd have a pretty good claim to the $65,000. The issue was whether you have a right to have the publication without the $65,000. I completely agree, Your Honor. Anyway, do you want to error me? No. As I said, the key thing to say, and I do have a very hard time understanding why your merits arguments are not precluded by our two prior cases. Okay. Oh, yes. Those two prior cases are NAACP v. Jones, which challenged the statute based strictly on wealth, and Chaplin v. County of Los Angeles, which acted on the basis of a barrier to free speech. This equal protection challenge is based on the extension of the options to the various counties without any guidance as to a non-discriminatory basis for exercising the option. Now, defray the cost is a denotative and not a connotative word. We all learned in high school the difference between denotative and connotative. It basically tells the counties what it can do. It doesn't tell them why you can do what you can do or what reason you can do what you can do. But I think that my opponents automatically assume that, oh, well, then it has to be on the basis of financial need. The Jones case, after saying that the wealth primary doesn't burden a suspect class or a fundamental right, so they're going to analyze it using the rational basis test, and then they go on and do it. So why isn't that the same thing you're asking us to do here? Well, Your Honor, it also indicated that that part that had to do with the ballot statement was subject to intermediate scrutiny. And even if we use the rational basis test, as we've said before, when you say to the county, do what you feel, implicitly for whatever reason you feel, there can be no rational basis. When you give complete and unbridled discretion, there's no rational basis because there's no basis. Wouldn't that be a really broad rule? Because aren't there all kinds of state statutes and also federal ones that say a county that wants to do X can do X? Yeah, well, I think what you're leading to is those cases that basically say, like Columbia River Gorge, that the Constitution protects counties. No, I'm not saying that. It doesn't protect counties, but it protects persons. No, I'm not saying that either. Well, I am then. Because what I'm saying is that when you're dealing with a. . . Well, let's suppose that if we looked in the California. . . First of all, California has a system where you have charter cities and non-charter cities, right? And charter cities can have the authority to do certain things if they want to do them. Then I'm guessing, I don't know this for sure, that there are lots of California statutes that say a county may do X if it wants to. Now, it seems to me that your argument, once you cut loose of the First Amendment because of the earlier case law and make it a strictly rational basis argument, is one that is going to apply to all of those cases and say that the State can't give unfettered discretion or non-described discretion to counties to do X. Well, first, without making that concession, I'd say that the First Amendment problem is intertwined within my argument because my argument says you extend the But even if you get past that, if we talk about rational basis and we talk about cases like Columbia River Gorge and Salisbury versus Maryland, basically what we're talking about is does this affect, do states have wide discretion in determining what political system is set up by the various counties? But here you're talking about impacting candidates for a state office who run indifferently from counties. Now, I know that people may tend to balk at thinking about politicians as any kind of class, but even if your argument is correct, they're at least entitled to a rational basis and to say that if you go to Los Angeles County and you run for judge, that the same communication you make with the ballot, to the voters in the sample ballot, which as California Supreme Court says, is given the official stamp of approval, is going to cost you $65,000. But if you run in San Diego, they've decided, or Santa Clara, you don't have to pay. Who pays for the ballot? Who pays for the ballot? The county? I don't know, Judge. I shouldn't. Isn't that critical to your argument? Because if the county has to pay, then the fact that the county is making a decision. No, but my argument is the extension of the option to each county to charge. Well, I understand, but wouldn't it be if the county weren't paying, if the state were paying, then there might be something to your rationality argument, because why would the county care then? But if the county is paying, which I assume is the case, it would be nice to know that, then the reason for extending the authority to the county is because the county is paying and they should be able to decide if they want to pay or not. But your statement presupposes that the reason they're charging is to recoup the cost. Yes, the reason they're charging is to get the money, whether they're doing it because they couldn't afford it otherwise is a different question, but they're certainly doing it to get the money as opposed to not getting the money. Or they may feel that one candidate might not be able to come up with the money and another candidate would, and they might want to advantage that candidate that can come up with the money by charging the fee. We don't know why. That's the problem. There's no guideline in the statute. You just said something I didn't understand. Can one county, say Los Angeles County, say you pay? No. You don't have to pay. No, no, but they can look at the candidates and say, okay, Bob Henry's running over there. He's our boy. He's got a lot of money. But so-and-so is also running, got some pretty good arguments to put in the sample ballot. Let's charge the money. Even my opponents conceded very late in the game that it doesn't, they can charge on one year and not charge four years from then. If I understood what you just said, you said a county can decide to charge this candidate or not? No, no, no, not at all. The county makes a blanket decision, but the decision of the state is to tell each county. That's all I was asking about. Yeah, yeah, okay. Incidentally, can you run without paying the money by just not having to pay? Of course you can run, as Captain pointed out, you can run. But as we've said before, the basis of our claim is that without any guidance, and this is just, is it asking too much to have the state put in the statute that any county that, who wishes to defray the cost based on financial need can do so by charging this fee? The question Justice Verzon asked presupposes that that's already in the statute. And they've made the slip of the tongue many times in the course of litigation below saying, well, you know, it's financial need. The statute isn't a statute because it's in the Constitution, I suppose, that if they were making the determination that you're suggesting, i.e., we're going to charge this year because we know who's running and we want to influence the outcome, that would be unconstitutional no matter what the statute says. So, therefore, the — not putting that in the statute has no impact. If you can prove it, you can — no, what I'm saying is if the statute said it's okay to do it for economic reasons, you would still have to prove that wasn't what they did. Oh, yeah. And then the presumption would be in their favor, and a person would have a hard time going up and saying — and he would have to prove, yeah, you know, they know me and they've — And you'd have to prove exactly the same thing now. If you came in and you made a case that when you — if you run next time and you filed a complaint and you said, you know, the reason that they decided to charge was to get me, you'd have the same case you would have if this was in the statute. What's the difference? But, John, out of giving a magistrate complete and unbridled discretion to do something is even in the system of democracy. That's my point. Telling the magistrates, you can decide whether or not to charge this fee. Like, as the language of Yickwell versus Hopkins, I love these old 1880 cases because they put it so eloquently. There's nothing in the ordinance to guide or control his action. It lays down no rules by which impartial execution can be secure.  But Yickwell versus Hopkins, they had to prove that, in fact, was being applied discriminatorily against Chinese people. It wasn't because it was — it didn't have conditions. It was because it didn't have conditions that gave rise to the ability to discriminate, and they discriminated. But the basis of the holding was that it was total unbridled discretion. And as they said, such power hardly falls within the domain of the law, and we are constrained to pronounce it as null and void. But wasn't the basis for it that they were, in fact, discriminating against Chinese people? Well, Your Honor, if you want to say the subtext of this is, like the subtext of my case — No, no, I'm not talking about the subtext. It is the subtext, Your Honor, because the main holding was that the statute was unconstitutionally — it was unconstitutionally — gave unconstitutional discretion to the magistrate, I would say. And I don't want to — We're getting way over your time, so unless my colleagues have further questions, there's probably — Oh. Good morning. I'm Judy Whitehurst. I'm with the Los Angeles County Counsel's Office, and I represent the Registrar-Recorder County Clerk for the County of Los Angeles as well as the Board of Supervisors. Los Angeles County has been charging for candidate statements for some 40 years now. Tell me what this means. Subsection E of the statute says, Before the nominating period opens, the local agency for that election shall determine whether a charge shall be levied. I don't exactly know what nominating period means. Does it mean that they have to decide whether they're going to charge or not before people put their names in? Yes. So they don't know who's running when they decide whether to charge? Exactly, Your Honor. And as to your point of capable of repetition, I'll tell you as representing the Registrar-Recorder as their election counsel, I'm in court on writs all the time for every election. I don't know what to do about this. We have all these cases that say, oh, it's an election law problem. It's capable of repetition, yet evading review. On the other hand, we review them all the time. And we get priority. I don't get it. We get priority. It comes up all the time. And for judicial candidates, it's constant. I mean, that's one hurdle to overcome, the mootness issue. But the other issue, again, goes to the two cases that you've already decided. I think they're right on point in terms of First Amendment equal protection argument. Here's my problem. We're required by law, even sua sponte if it's not raised, to determine whether we have jurisdiction before we go to the merits. So we can't get to Kaplan and NAACP until we decide whether it's moot. We've got this big body of cases that says election law cases are capable of repetition, yet evading review. We also have a big body of cases where we review them. And I just don't know what to do about it. You know, and I don't know how to help you in that regard. Because I just, from my perspective, they are reviewed. And we get priority. Are you talking about in California, state court? Yes. Yes. But, you know, within the Ninth Circuit, unconstitutional arguments also are the same. On routine election challenges as opposed to the governor or election. Not necessarily routine. I think that's the difference. Yeah. You don't get review on routine ones? I guess if you want to call this a routine, in terms of a judicial candidate, in terms of a statewide office, like a governorship, we don't have them all the time. Most of the activity is on small candidates. What I'm trying to find out is we sit on motions and screening. And my recollection is that when I get motions and screening and even numbered years approaching the election, we always do some expedited review of election cases. And I haven't noticed that they're all blockbusters. Some of them seem really routine. Occasionally they're blockbusters. I just don't know what's going on. It seems like we're saying one thing and doing another. I think that's probably accurate. Is there any pattern that we don't review them if they're less than statewide office or something? I don't know what our staff attorneys do. In this particular case, I think Mr. Henry did file an appeal, and it was denied as to his preliminary injunction. My recollection is that we have a one additional issue to what Judge Kleinfeld is talking about is the Supreme Court. And my recollection is that we have some case law that says the period it would take to go to the Supreme Court counts. Excuse me? The period it would take to go to the Supreme Court counts. And if that's true, and I'm almost certain it is true, then you're never going to get review in the requisite time period, no matter how many summersaults we turn. Yeah, everything would have to be on an emergency basis. The standard for our state cases that go normally to the state courts are that the challenge should be heard prior to it And so what we look at is our printing deadline. And if we can't get it resolved prior to the printing deadline, then, yes, it will impact the election. And that's what the judges in the Superior Court look at. They want to know what our printing deadline is. And then they negotiate with you about your printing deadline at great length. I did some of those cases. And then they tell me your paper's due tomorrow. Right. And the printing deadline, put back your printing deadline. Right. You know, and for Los Angeles County, we have over 4 million registered voters. It's a long process. It's a complicated process. It's not easy. We're not like Alpine County. We don't have 1,300 residents. We're the largest voting jurisdiction in the United States. Elections in Los Angeles County are complicated. And they're costly. And going to the merits issue, in Kaplan and NAACP case or the Jones case, there is a rational basis. The state has recognized that they didn't want to burden local governments. And it would be a burden on us. We do pay for the election, and so we want to recoup the cost. On the other hand, Mr. Henry has a rather modest proposal, which is that the statute say for economic reasons. I mean, that really wouldn't bother you. No, but in the other sense that, you know, like in the NAACP case, to require that judicial campaigns are publicly funded, that doesn't necessarily go to the economics of it. That's more of almost a societal issue. Do we have to? Did the taxpayers have to fund for people's campaigns? Well, I must say that if I were, you know, going back to Kaplan, I find some of his statements not terribly convincing, that the cost recovery system doesn't affect a candidate's access to the ballot or right to participate in the election. A candidate doesn't place a statement in a voter pamphlet, will still appear on the ballot, and can do other kinds of election. I mean, as a practical matter, for all the reasons you're saying, in L.A. County, if you're not in a ballot pamphlet, you're never going to get your stuff to the 4 million voters. Well, you're not going to get it to the 4 million voters, but query whether your candidate's statement is convincing enough that it matters. Query whether people read it. I guess if you were indigent, but people thought you were just terrific, other people could put up billboards and radio spots and TV ads for you. You can go stand on the corner of Hill and First and give flyers to every person that walks into the courthouse. I'm running as a judicial candidate in Los Angeles County. A friend of mine ran for governor in Alaska when he unfortunately happened to be broke. I had to lend him a tuxedo when he won for his inaugural ball. Yeah. You know, I mean, I can't decipher, and that's why I cited my brief, that the person above Mr. Henry in the results didn't have a candidate statement. I mean, it's hard to say what the impact of the candidate statement is. I have two back questions. One is, I assume the county is paying for these calls. Yes. If we don't charge for the candidate statement, yes, we do pay. Unless it's a special election and there's some scenario where the state's going to reimburse us, we pay. And elections in Los Angeles County are expensive. We, in fact, didn't get reimbursed for the recall election. That was very expensive. But you still have the, you do not get the reimbursement. And the second question is whether the ballot book says in it that, informs the voters that these statements are paid for by the candidates. I don't believe the ballot, I don't believe the sample ballot indicates that. But I could be wrong. I could be wrong. But people don't know why some people have ballot statements, have statements in the booklet and some people don't. They might think there's something wrong with the people who don't. Or they're lazy or there's something else. It could be. I would have to look. I'm not exactly sure if we say it. Next time I will look to see if we do say that. That's if you assume everybody reads them. If you assume everybody reads them, then you wouldn't have them. So we have to assume that they're worth something. And assuming that they're worth something, if it's an official publication, which usually people think the government is paying for, not somebody else, and it doesn't inform people that that isn't the case, and it's essentially an advertisement, then I think that my own sense would be that there really is a sort of government skewing of the election going on. Well, there is the appearance, like I think in Kaplan, that it recognized under the First Amendment issue that it's a limited public forum, that it's a document put out by the government, and it has the appearance for First Amendment purposes that it's government sanctioned. Yes, but if the government, if you didn't know that people were being charged for this, it's essentially an ad. And you got a document from the government which describes some people and not others. Wouldn't you think that there was a good possibility that the government liked some people better than others, because it was telling you more about some people than it was about others, unless you had an explanation of why that was? You might, and that's what makes me think we must have that statement in there, but I can't be sure. And that's why next time I will make sure if it's in there or not. We're over time. Thank you, Your Honor. Thank you, Counsel.
judges: Noonan, Kleinfeld, Berzon